No. 24-3121

**UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT**

**Jennifer Blaine,**
**Appellant,**

**v.**

**Mystere Living & Healthcare, Inc. D/B/A Wellsville Health & Rehab,**
**Appellee**.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS
Case No. 2:22-cv-02471-TC
The Honorable Toby Crouse, District Court Judge

**APPELLANT'S BRIEF**
**ORAL ARGUMENT REQUESTED**

---

**HKM EMPLOYMENT ATTORNEYS LLP**

By:    /s/ *Ethan A. Crockett*
Ethan A. Crockett        KS No. 79609
John J. Ziegelmeyer III    KS No. 23003
1501 Westport Road
Kansas City, Missouri 64111
Tel: 816.875.3332
ecrockett@hkm.com
jziegelmeyer@hkm.com
www.hkm.com

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………….. ii

TABLE OF AUTHORITIES………………………………….... iv

STATEMENT OF RELATED CASES vi

JURISDICTIONAL STATEMENT……………………………… vi

STATEMENT OF ISSUES……………………………………... vi

STATEMENT OF THE CASE…………………………….... 1

SUMMARY OF THE ARGUMENT…………………………… 6

ARGUMENT……………………………………………… 8

    I.    The District Court Erred in Granting Summary Judgment to Appellee on Blaine's Claim of Title VII Sex Discrimination…… 8

        A.    Standard of Review…………………………………….. 8

        B.    The District Court failed to properly apply the correct standard of harm necessary under *Muldrow*…………………………. 9

        C.    A rational trier of fact could find that Appellee terminated Blaine because of her sex……………………………………… 11

            1.    The evidence, viewed in the light most favorable to Blaine, demonstrates that she suffered an adverse employment action……………………………………………… 11

            2.    The evidence, viewed in the light most favorable to Blaine, shows that her termination gives rise to an inference of sex discrimination………………………………………....... 14

            3.    The evidence regarding Appellee's offered non-discriminatory rationale is, at best, unclear……………….. 16

    II.    The District Court Erred in Granting Summary Judgment to Appellee on Blaine's Claim of Title VII Retaliation…………….. 17

        A.    Standard of Review…………………………………….. 18

B.      A rational trier of fact could find that Appellee's termination of Blaine's employment was retaliatory under Title VII…………………………………………………………...    19

      1.      Blaine engaged in protected activity and a causal connection exists between her protected activity and the challenged action…………………………………………...    19

      2.      The evidence, viewed in the light most favorable to Blaine, demonstrates that she suffered a materially adverse action…………………………………………………….    21

      3.      The evidence regarding Appellee's offered non-retaliatory rationale is unclear, and best resolved by the factfinder at trial…………………………………………………….    23

III.      The *BNSF* Standard of Harm Necessary to Support a Retaliation Claim is unsupported by the text of Title VII……………………    24

     A.      The Plain Text of Title VII…………………………………….    25

     B.      The *BNSF* Standard………………………………………….    26

CONCLUSION…………………………………………………………...    28

REQUEST FOR ORAL ARGUMENT………………………………………...    30

CERTIFICATE OF COMPLIANCE WITH WORD LIMITS AND TYPEFACE REQUIREMENTS…………………………………………...    30

CERTIFICATE OF SERVICE…………………………………………...    31

ATTACHMENT 1 – DISTRICT COURT ORDER GRANTING SUMMARY JUDGMENT FILED 07/25/2024…………………………    Ex. A

ATTACHMENT 2 – DISTRICT COURT JUDGMENT FILED 07/25/2024…………………………………………………………...    Ex. B

# TABLE OF AUTHORITIES

## CASES

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006)………………………………………………... 10, 13, 20-22, 25-28

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
    575 U.S. 768 (2015)…………………………………………….. 27

*Ford v. Jackson Nat'l Life Ins. Co.*,
    45 F.4th 1202 (10th Cir. 2022)…………………………………… 11, 14, 16

*Hansen v. SkyWest Airlines*,
    844 F.3d 914 (10th Cir. 2016)…………………………………... 19, 21, 23

*Johnson v. Weld*
    594 F.3d 1202 (10th Cir. 2010)………………………………... 10

*Marcantel v. Michael & Sonja Saltman Fam. Tr.*,
    993 F.3d 1212 (10th Cir. 2021)………………………………… 8, 18, 19

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)…………………………………………… 8, 19

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)…………………………………………… 14

*McNeal v. City of Blue Ash, Ohio*,
    117 F.4th 887 (6th Cir. 2024)………………………………… 9

*Muldrow v. City of St. Louis, Missouri*,
    601 U.S. 346 (2024)………………………………………….. 9, 10, 13, 24-27

*Oncale v. Sundowner Offshore Services, Inc.*,
    523 U.S. 75 (1998)…………………………………………… 10, 22

*Price Waterhouse v. Hopkins*,
    490 U.S. 228(1989)…………………………………………… 15

*West v. Gibson,*
    527 U.S. 212 (1999)………………………………………… 22

## Statutes, Rules, and Regulation

28 U.S.C. § 1291……………………………………………….. vi

28 U.S.C. § 1331……………………………………………….. vi

42 U.S.C. § 2000e……………………………………………………… 11, 19, 25

Fed. R. Civ. P. 56…………………………………………………….. 8, 19

## STATEMENT OF RELALTED CASES

There are no prior or related appeals in this matter.

## JURISDICTIONAL STATEMENT

This appeal is taken from an Order granting Summary Judgment, (App. 0353)[1], entered on July 25, 2024, and a Final Judgment, (App. 0370), entered on the same day, by the Honorable Toby Crouse, United States District Judge, District of Kansas. The District Court had subject matter jurisdiction over this case under 28 U.S.C. § 1331. This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291. This appeal is from a final, appealable Order of the District Court, and Notice of this Appeal was timely filed on August 22, 2024. (App. 0006).

## STATEMENT OF ISSUES

Whether the District Court's grant of summary judgment to Appellee on Appellant's claims of sex discrimination and retaliation was error, due to the District Court's failure to draw reasonable inferences in favor of the non-moving party and apply the correct standard of harm, such as the standards articulated in *Muldrow* and *BNSF v. White*.

---

[1] The Appellant's Appendix is cited as "(App. __)." throughout.

## STATEMENT OF THE CASE

Appellant Jennifer Blaine worked for Appellee Mystere Living & Healthcare, Inc. D/B/A Wellsville Health & Rehab ("Wellsville"), a retirement and assisted living facility, for over seven years, starting as an Occupational Therapist Assistant before ultimately being promoted to the Director of Rehab. (App. 0031). Scott Averill is the owner of Wellsville and was Blaine's only supervisor. (App. 0030). Throughout her employment, Blaine was forced to interact with Tim Sullivan, who worked in several roles for Wellsville. (App. 0031, 195). Averill considers Sullivan to be a friend who socializes with him and his family outside of work. (App. 0229). Sometime in April or May 2019, Blaine and Sullivan were working an omelet station, serving breakfast for the residents. (App. 0032, 159). During this breakfast Sullivan touched and patted Blaine's buttocks repeatedly, acting as if he were looking for a pen, jokingly stating "no pen in there." *Id*. Blaine immediately reported this encounter to Averill. *Id*. Blaine also reported this encounter to Wellsville's Human Resources representative, Ashley Washington, who told Blaine that "nothing would happen" as Sullivan was friends with Averill. (App. 0167). Sullivan confirmed to Averill that he patted Blaine's buttocks several times, and Sullivan received only a verbal warning. (App. 0032, 159).

Due to the incident of Sullivan's groping, Blaine formally requested to avoid a working environment with Sullivan, which Averill initially agreed to provide. (App. 0160). Sullivan was nonetheless promoted to business and human resources manager in July 2019. (App. 0163). Sullivan was terminated in February 2020 because of his ineffectiveness in the role, but was rehired in a food services position a few short months later in September 2020. (App. 0164). Shortly after Sullivan's return, Blaine was forced to work another omelet breakfast with Sullivan. (App. 0165-166). Blaine went to Averill and reminded him of her prior request to not work directly with Sullivan. (App. 0159). In response, Averill asked Blaine if this was in connection with sexual comments that Sullivan had made to Blaine, but Blaine had to remind Averill that Sullivan admitted to touching her inappropriately. (App. 0209).

Sullivan's treatment of Blaine and other women in the workplace remained unchanged after her reports. He continued engaging in unwelcome physical and verbal harassment, including slapping female employees on the backside, asking them to "sit on his lap", and telling inappropriate jokes. (App. 0167). These actions occurred "often" throughout Blaine's time with Wellsville. (App. 0204).

On October 19, 2021, Plaintiff witnessed Sullivan snap a rubber glove on the backside of a co-worker, Darcy Schnoor. Concerned for her younger co-worker, Blaine approached Schnoor to ask if she was okay. (App. 0033, 168). Schnoor

2

confided in Blaine that she was not surprised by Sullivan's actions, as he had done something similar before, and regularly made sexually inappropriate and explicit comments to her, including in the presence of Averill. (App. 0168). Blaine had never before been aware of Sullivan's harassment of Schnoor. (App. 0168-169). Blaine and Schnoor promptly reported not only Sullivan's conduct that day, but his pattern of sexual harassment to Averill in another attempt to address Sullivan's ongoing misconduct. (App. 0169). Instead of investigating these complaints, Averill briefly reviewed surveillance camera footage of the October 19 incident and summarily dismissed the complaints of these women, concluding that Sullivan had not engaged in harassment on October 19 or at any other time. *Id*. On or around October 26, 2021, Schnoor filed a written complaint with Wellsville regarding Sullivan's longstanding inappropriate conduct spanning over her entire tenure at Wellsville. (App. 0161, 330-333). Averill was "not concerned" about any of the other complaints reported by other female employees because he believed that these women were not being truthful and did not believe that there was any harassment, as these women were just playing into Blaine's "narrative." (App. 0169, 233-235). Averill further dismissed these complaints, stating that they these claims were just "rumor" and "gossip." (App. 0162, 234).

Through Wellsville's actions, Blaine received an unmistakable message: female employees who report harassment are unwelcome, unsupported, and

ultimately disposable. Her experience reinforced that Wellsville's management (Averill) had no intention of protecting women from workplace harassment but would instead retaliate against those who dared to speak up. (App. 0217).   After the company's repeated refusal to address her legitimate concerns and witnessing the harassment of others, Blaine concluded that Wellsville intended for her to either shut up or get out. (App. 0172, 216-217, 219). On November 9, 2021, Blaine expressed her intent to resign, as she felt forced to resign because the company failed to address complaints of pervasive sexual misconduct and did not protect her and other female employees from sexual harassment, creating an intolerable environment, planning to leave on November 23, 2021. (App. 0034-35, 162, 215-216).   But in a final act of retaliation, Averill made it clear that he would not tolerate Blaine calling Sullivan a "sexual predator," despite the fact that Sullivan had a documented history of sexual misconduct, with multiple complaints filed against him. (App. 0169-170, 173-174, 244). Nevertheless, just three days later, on November 12, Blaine was abruptly informed that her employment was ending effective immediately – a clear and retaliatory response to her unwillingness to stay silent about Sullivan's behavior. (App. 0171).

Wellsville had never once raised a concern about Blaine's performance. Instead, she was assured at the end of her employment that she "did a great job." (App. 0172, 216). Blaine was robbed of the chance to say goodbye to her co-workers,

4

residents and families, creating unnecessary emotional harm. (App. 0220). Employees of Wellsville, such as Blaine and Schnoor, understood that for an employee who had put in as much time as Blaine prioritizing residents and building meaningful relationships at the facility, being deprived of a chance to say good-bye was "heartbreaking".  (App. 0203, 217, 275). The impact on Blaine has been severe and lasting, as she has endured emotional suffering and ongoing disruption to her well-being, reflecting a significant and harmful toll on her life. (App. 0220). This distress is neither trivial nor fleeting—it has altered her daily life and continues to affect her profoundly. *Id*.

Blaine filed her Complaint in the United States District Court for the District of Kansas on November 16, 2022, and Blaine amended her Complaint on January 10, 2023. (App. 0003, 7-17). On July 25, 2024, the District Court granted Defendant's Motion for Summary Judgment. (App. 0006, 353-370). This appeal followed.

## SUMMARY OF THE ARGUMENT

Based on the facts set forth above, and reasonable inferences drawn therefrom, a reasonable jury could find for Blaine on her claims for sex discrimination and retaliation under Title VII. Specifically, a jury could find, on Blaine's discrimination claim, (1); Blaine is a female; (2) that she suffered "some harm," under the *Muldrow* standard, when she was told on November 12 that she would no longer be allowed to work for Wellsville; and (3) that she was terminated under circumstances strongly suggesting discrimination, based on Averill's dismissal of not only Blaine's but also other women's legitimate complaints as "rumor" and "gossip," despite Sullivan's documented history of harassment and his own prior admissions of sexual harassment. Averill's refusal to take these reports seriously reflects a discriminatory bias against women who came forward about harassment.

Similarly on Blaine's retaliation claim, a reasonable jury could find (1) that she engaged in protected activity when she reported Sullivan's continued harassment of her and other women; (2) that she suffered "some harm," under the *Muldrow* standard, when she was told on November 13 that she would no longer be allowed to work for Wellsville; and (3) she was terminated under circumstances clearly suggesting discrimination and retaliatory motive, based on Averill's dismissal of Blaine's and other women's legitimate complaints as mere "rumor" and "gossip," despite Sullivan's own admissions of sexual harassment and Averill's statements

6

that he made the decision to terminate Blaine's employment because, in his view, she was "not happy", and he did not want someone on his team asserting that a coworker was a "sexual predator." Averill's decision to terminate Blaine thus reflects an attempt to silence complaints of harassment rather than to address them.

In granting summary judgment for Appellee, the District Court made three key errors. The District Court erred first in failing to apply the correct standard of harm under *Muldrow* a Title VII plaintiff must show in a sex discrimination claim. When properly applied, Plaintiff clearly suffered harm that was connected to her sex. Second, the District Court failed to apply the correct standard of harm under *BNSF* and failed to draw appropriate inferences regarding the retaliatory actions that she faced at Wellsville. Also, in reading the Supreme Court's ruling in *Muldrow*, the District Court's ruling on Blaine's retaliation claim must also be overturned. As such, Appellant respectfully requests that the District Court's Order granting summary judgment to Appellee be reversed in full.

# ARGUMENT

## I.    The District Court Erred in Granting Summary Judgment to Appellee on Blaine's Claim of Title VII Sex Discrimination.

The District Court erred in granting summary judgment for Wellsville on Blaine's claim of sex discrimination in violation of Title VII. In finding that Blaine was paid throughout her notice period, the District Court failed to properly apply the Supreme Court's analysis set forth in *Muldrow* and concluded that the Blaine suffered no adverse employment action. Further, the District Court did not draw the proper inferences in favor of Blaine, in its determination that she was not terminated. With the proper application of *Muldrow* and when the summary judgment standard of review is properly applied, it is clear that genuine issues of material fact preclude summary judgment on this claim.

### A.    Standard of Review

This Court reviews a grant of summary judgment *de novo*. *Marcantel v. Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212, 1221 (10th Cir. 2021). In doing so, the Court reviews the evidence and draws all reasonable inferences in favor of the non-moving party. *Id*. Summary judgment is only appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). If the record taken as a whole *could* lead a rational trier of fact to find for the non-moving

party, summary judgment must be denied. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.    The District Court failed to properly apply the correct standard of harm necessary under *Muldrow*.**

In April of 2024, the Supreme Court held in *Muldrow v. City of St. Louis*, that a plaintiff alleging sex discrimination was not held to some higher standard of harm, but rather, an employee needs to show "some harm" in order to prevail on a discrimination claim. *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024). While the District Court cited *Muldrow* in its summary judgment order, the decision was issued after the summary judgment briefing had concluded, leaving the Court without the benefit of comprehensive arguments on *Muldrow's* significance and its application to this case. (App. 0366).

Although *Muldrow* involved a claim of a discriminatory transfer, the Court made clear that its decision stemmed from Title VII's generally applicable statutory language, namely the phrase "discriminate against" which contains no language requiring plaintiffs to show a high level of harm. *Muldrow*, 601 U.S. at 355; *See McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 900 (6th Cir. 2024). Thus, to make out her sex discrimination claim, Blaine must show that she suffered some harm, in respect to a term or condition of employment. *Muldrow* 601, U.S. at 354-55.

In deciding that Blaine had not suffered an adverse employment action, the District Court erroneously focused on two points[2]: (1) that Blaine had expressed an intent to resign before being terminated; and (2) she had not suffered any financial harm.

In *Muldrow*, the Court reiterated previously established case law that Title VII does not require a Plaintiff to show financial harm, as Title VII covers more than the economic or tangible *Id* at 354; *Oncale v. Sundowner Offshore Services, Inc*., 523 U.S. 75, 80, (1998); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 72, (2006). As such, Blaine's lack of monetary harm is not conclusive of her claims. After Blaine was summarily fired on November 12, she was deprived of her chance to say goodbye to the residents, their families, and the staff that she had grown to love over her seven years at Wellsville. (App. 0171, 220). As a result of her abrupt termination, Blaine has since been unable to escape how her employment ended, causing her emotional distress that causes her to lose sleep on most nights. (App. 0220). In other words, Blaine was deprived of leaving her employment on her own terms, which has clearly caused her significant and ongoing harm that is cognizable by Title VII.

---

[2] The District Court failed to analyze Blaine's sex discrimination claims, citing *Johnson v. Weld 594 F.3d 1202* (10th Cir. 2010) for the proposition that a plaintiff who fails to meet the threshold for a retaliation claim would similarly fail in a constructive discharge context.

**C.    A rational trier of fact could find that Appellee terminated Blaine because of her sex.**

Title VII makes it unlawful for an employer to "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual" because of such individual's sex. 42 U.S.C. § 2000e-2(a). To establish a claim for sex discrimination under Title VII, Appellant must show that "(1) she belongs to a protected class, (2) she suffered an adverse employment action, and (3) the action took place under circumstances giving rise to an inference of discrimination." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1215 (10th Cir. 2022). It is undisputed that Blaine, a female, is a member of a protected class. Based on the evidence at this stage, taken in the light most favorable to Blaine, a reasonable jury could find that she has met each of those elements.

**1.    The evidence, viewed in the light most favorable to Blaine, demonstrates that she suffered an adverse employment action.**

Because Appellant has satisfied the first element of her claim for sex discrimination, she must next demonstrate that, when viewed in the light most favorable to her, she suffered an adverse employment action. The District Court erroneously found that no such inference of a termination could be drawn from the record, despite clear testimony from Blaine, Averill, McCoy, and Schnoor that she was, in fact, terminated. (App. 0217, 243, 275). Rather than recognizing this, the Court reframed Blaine's termination as simply an accelerated final day, overlooking

that her termination was directly triggered by her reports of sexual harassment, and Averill's dismissal of her protected activity as "rumor" and "gossip". (App. 162, 234). Further, the District Court concluded that no adverse employment action occurred because Blaine had suffered no financial harm. (App. 0366-367). However, when the facts and all reasonable inferences are properly drawn in Appellant's favor, it is evident that a reasonable jury could find that Blaine suffered an adverse employment action.

On November 9, 2021, after years of dealing with Tim Sullivan's documented sexist treatment of women including herself and facing Wellsville's refusal to intervene to stop such conduct, Blaine notified Wellsville that she intended to resign on November 23, 2021. (App. 0034-35, 162, 215-216). However, on November 12, 2021, Wellsville terminated Blaine's employment, telling her that would be her last day of work for the company. (App. 0171). In contrast to Blaine, other employees who had not made complaints of sexual harassment were allowed to choose their last days of employment and were given an opportunity to say goodbye to the residents and staff (App. 0203, 217, 275). In fact, Blaine stated that such an unceremonious ending to a seven-year career at Wellsville has lingered in the back of her mind "almost every day" and has caused her to lose sleep, because she wasn't allowed to say goodbye to these residents, their families, and staff members who she had grown to care for deeply. (App. 0220).

The District Court erred by failing to draw the appropriate inference that Blaine was terminated. In concluding that Blaine had not suffered an adverse employment action, the Court relied heavily on the fact that Blaine allegedly suffered no monetary harm, finding that as she was paid both her wages and benefits as if her employment ended on November 23, Wellsville "did not change her employment status for the worse" (App. 0366-367). However, such reasoning ignores Supreme Court caselaw rejecting the notion that Title VII requires some form of financial harm. *See Muldrow*, 601 U.S. at 354; *BNSF*, 548 U.S. at 72. Non-monetary harms also meet the adverse action standard under Title VII.

Throughout the record, it is clear that Blaine was terminated. Blaine stated that she felt like she was terminated and testified to the harm that came with such a termination. She also noted that, generally, an employee at Wellsville would be allowed to work through their notice period. (App. 0217). Averill stated that he made the decision to let Blaine go. (App. 0243). Jill McCoy, Wellsville's Administrator stated that she informed Blaine that she would not be working out her "notice period" (App. 0152). Schnoor also testified that they "let [Blaine] go," and that the manner in which Blaine was let go was "heartbreaking." (App. 0275). Schnoor also later referred to Blaine as being fired. (App. 0152). From these facts, it is clear that a reasonable factfinder could conclude that Blaine suffered an adverse employment action.

The record, when drawing the proper inferences in favor of Blaine, is clear that she was terminated by Wellsville.

> **2.**     **The evidence, viewed in the light most favorable to Blaine, shows that her termination gives rise to an inference of sex discrimination.**

Once Blaine establishes the first two elements of a *prima facie* case, she must then show that the adverse employment action gives rise to an inference of discrimination, or that her termination was connected with her sex. *Ford*, 45 F.4th at 1215. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Blaine, along with several other women, reported Sullivan to Wellsville for his continued sexual harassment. Rather than conduct an investigation, Averill dismissed these claims as "rumor" and "gossip" (App. 0162, 234). Once Blaine expressed her intent to resign, due to Averill's failure to address sexual misconduct that led to an intolerable working environment, Averill made the decision to end Blaine's employment. (App. 0243). Averill's stated reason for the termination was his view that Blaine was not happy, and that he did not want someone asserting that a coworker was a "sexual predator." (App. 0244).

From the evidence in the record, in coming to the decision to end Blaine's employment, Wellsville relied heavily on both her protected activity and outdated and discriminatory sex stereotypes about women. Specifically, Averill appeared to view women as prone to gossip, and his notion that multiple women's sexual

harassment accusations against Sullivan were not legitimate complaints but rather a cadre of women attempting to create a false narrative, is deeply troubling. Title VII has long prohibited the use of sex stereotypes in making employment decisions. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989). As the Supreme Court held, "In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." *Id*. Wellsville's reliance on these stereotypes to justify Blaine's termination directly contravenes Title VII well-established prohibition on such and highlights the discriminatory motives underlying its decision.

Averill testified that he only reviewed the video of the glove-snapping incident, but none of the other allegations of the women who came forward. (App. 0245). Blaine told Averill that she did not feel protected in the workplace, and that women felt fearful coming forward with complaints. (App. 0241). Schnoor wrote a statement for Averill outlining her allegations of harassment. (App. 0161, 330-333). Yet Averill did not ask Schnoor about her written statement or whether or not she felt comfortable working with Sullivan and did not ask Sullivan about these other incidents of alleged sexual harassment. (App. 0241). Averill believed that Blaine was enrolling people in a "narrative," not based in fact, and that such complaints were simply "rumor" or "gossip" (App. 0162, 169, 233-235). In fact, Averill testified

that in regard to Blaine's original complaint in 2019, he "took [Sullivan] at his word" that he had groped Blaine. (App. 0230). From Averill's testimony, the only incident of sexual harassment that he acknowledged was the one confirmed by a man.  When viewed in the light most favorable to Blaine, Averill's responses to sexual harassment allegations reveal a troubling pattern: dismissing accusations as mere rumors when made by women, or issuing minimal discipline when men admitted to misconduct.  From the record, and drawing all reasonable inferences, a rational fact-finder could conclude that Averill relied on impermissible sex-based stereotypes to justify ending Blaine's employment.

When viewed in the light most favorable to Blaine, Wellsville and Averill disregarded legitimate claims of sexual harassment by dismissing them as mere "gossip," and ultimately relied on these harmful stereotypes as pretext for ending Blaine's employment. This approach reflects a clear bias against Blaine based on outdated, discriminatory stereotypes in the decision to terminate Blaine.

### 3.    The evidence regarding Appellee's offered non-discriminatory rationale is at best, unclear, and worst, non-existent.

Once Blaine satisfies her initial burden under *McDonnell Douglas*, the burden shifts to Wellsville to put forth a legitimate, nondiscriminatory reason for her termination, and if put forth, the burden shifts back to Blaine to show that such reason is, in fact pretextual. *Ford*, F.4th at 1215. While the District Court did not reach this part of the analysis, having erroneously concluded that Blaine did not

prove a *prima facie* case, it is clear that the reasons offered by Appellee are either discriminatory or retaliatory, or pretextual.

Appellee's sole proffered reason for the termination is Blaine's purported "unhappiness" and her complaints of Tim Sullivan, which Averill dismissed as "gossip." Again, the irony is striking: Blaine – a dedicated employee who repeatedly reported sexual harassment, only to have her concerns ignored and dismissed as mere "gossip" is now unilaterally labeled by Averill as "unhappy" simply for raising legitimate and good-faith concerns. This reliance on unfounded stereotypes about Blaine's complaints further indicates pretext. The notion that an employee who had reported legitimate harassment concerns would be met with disbelief and be labeled "unhappy" speaks volumes about the pretextual nature of Appellee's reasoning. Indeed, to the extent the stated reason for the decision is not pretextual, it is only because Wellsville's claimed non-discriminatory rationale *is itself discriminatory stereotyping*.

As set forth above, Blaine has met her burden. Accordingly, Appellant respectfully requests that this Court to reverse the District Court's grant of summary judgment on her Title VII sex discrimination claim.

## II.    The District Court Erred in Granting Summary Judgment to Appellee on Blaine's Claim of Title VII Retaliation

The District Court also erred in granting summary judgment for Wellsville on Blaine's claim of retaliation under Title VII. In finding that Blaine was paid

throughout her notice period, the District Court improperly reasoned that Blaine suffered no harm, citing several cases that reached a similar conclusion. In simply reciting similar cases and attempting to apply a bright-line rule, the District Court failed to view the retaliatory conduct in the proper context to analyze whether or not Blaine suffered a material harm as required by Supreme Court precedent. As a result, the District Court erred in not drawing all reasonable inferences in favor of Blaine from her testimony regarding the end of her employment. When those errors are corrected, it is clear that genuine issues of material fact preclude summary judgment on this claim. Correctly applying the proper retaliation standard, as outlined in *BNSF v. White*, Blaine has raised genuine issues of fact regarding the material harm that she suffered as a result of Wellsville's termination of her employment.

### A.    Standard of Review

As with Appellant's claim for discrimination, this Court reviews a grant of summary judgment *de novo*. *Marcantel v. Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212, 1221 (10th Cir. 2021). In doing so, the Court reviews the evidence and draws all reasonable inferences in favor of the non-moving party. *Id*. Summary judgment is only appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). If the record taken as a whole *could* lead a rational

trier of fact to find for the non-moving party, summary judgment must be denied.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.    A rational trier of fact could find that Appellee's termination of Blaine's employment was retaliatory under Title VII.**

Under Title VII employers such as Wellsville shall not "discriminate against any of [their] employees…because [the employee] has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). To prevail on her claim for retaliation, Appellant must show that (1) that she engaged in protected activity, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection exists between the protected activity and the materially adverse action." *Hansen v. SkyWest Airlines,* 844 F.3d 914, 925 (10th Cir. 2016) (quotation marks removed). Based on the evidence in the record, when taken in the light most favorable to Blaine at this stage of the case, a reasonable jury could find that she has met each of those elements. Accordingly, Blaine's claim for retaliation warrants further examination at trial.

**1.    Blaine engaged in protected activity and a causal connection exists between her protected activity and the challenged action**

As to the first element, it is clear that Blaine engaged in protected activity when she complained to Averill about Sullivan's continued sexual harassment. (App. 0366). Appellee did not challenge the finding that Blaine engaged in protected

activity at the District Court, and Appellant does not challenge the District Court's finding that she has met her burden for this element.

Because the District Court held that Blaine did not meet the second element of her retaliation claim, the Court declined to address the third element of Blaine's claim, specifically whether a causal connection exists between her protected activity and the materially adverse action. As discussed above, the evidence in the record demonstrates that Wellsville, in deciding to terminate Blaine's employment, relied almost exclusively on her complaints of Sullivan's sexual harassment as the reason for ending her employment.

Blaine, as well as several other women, reported Sullivan to Wellsville for his continued sexual harassment. (App. 0169). However, rather than conduct a meaningful investigation – or any investigation at all – Wellsville owner/operator Scott Averill dismissed these claims as "rumor" and "gossip" (App. 0162, 234). Averill then made the decision to terminate Blaine's employment, stating she was "not happy" due to her complaints of Sullivan's behavior, and admitting that he did not want someone asserting that a coworker was a "sexual predator" on his team. (App. 0244). Again, this highlights the contradiction: Blaine, a dedicated employee whose harassment reports were dismissed as "gossip," is now labeled "unhappy" simply for raising these concerns. It is clear from the record, that Averill decided to end Blaine's employment in connection with her protected activity.

**2.    The evidence, viewed in the light most favorable to Blaine, demonstrates that she suffered a materially adverse action.**

The District Court erred by finding that Blaine must, and in fact did not, suffer an adverse employment action. Under a Title VII retaliation claim, a plaintiff is only required to show that a reasonable employee would view the challenged action as materially adverse. *Hansen,* 844 F.3d at 925.

In concluding that Blaine had not suffered either a materially adverse action or adverse employment action, The District Court cites several cases that suggest a paid but unworked notice period does not constitute an adverse employment action. (App. 0366-367). The District Court then concluded that because Blaine was compensated, she could show no harm. (App. 0367). However, the record shows that Blaine was in fact materially harmed. Blaine stated that her termination has lingered in the back her mind "almost every day." (App. 0220) Further, due to Wellsville's decision to terminate her immediately, Blaine was denied the opportunity to say goodbye to the residents, their families, and staff members who she loved. This distressing experience has since caused her to lose sleep almost every night. *Id*. Clearly Blaine has suffered harm.

The question then becomes whether or not such a harm is *material* harm. In *BNSF*, the Court examined a circuit split regarding the level of harm that was required in a Title VII retaliation cases. *BNSF*, 548 U.S. at 57. The Court concluded that the harm must be material, and that a reasonable person find that harm material.

21

*Id.* at 68. The Court further explained that the context of the challenged action matters, as the "real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed" *Id*. at 69, *Oncale*, 523 U.S. at 81-82. The Court then provides two examples, including a schedule change and a refusal to invite an employee to lunch, as what would normally be "trivial" and a "non-actionable petty slight," but could very well be actions that might dissuade a reasonable employee from complaining of discrimination, depending on the context. *BNSF*, 548 U.S. at 69. Such a contextual analysis was not undertaken at the District Court, instead the District Court seemed to apply a bright-line rule, that an employee who is paid all compensation owed is not harmed under Title VII.

Despite the District Court's finding, Blaine's lack of monetary damages is not conclusive in this inquiry. The Court in *BNSF* recognized that such adverse actions need not involve monetary losses, noting that Title VII was amended to permit the recovery of compensatory and punitive damages "to help make victims whole." *Id*. at 72 (emphasis added) (citing *West v. Gibson,* 527 U.S. 212, 219 (1999)). In fact, the Court found that a jury could reasonably conclude that a reassignment of duties within the plaintiff's own job description constituted a materially adverse action.

*BNSF*, 548 U.S. at 71. Blaine's harm here is similarly non-monetary, but still squarely within the type of harm contemplated by the *BNSF* Court.

Despite the treatment that she suffered at the hands of Sullivan, Blaine loved her job. She loved the residents that she cared for, the families that came in to visit, and the people that she worked with. Blaine had a long-lasting career at Wellsville, working there for over seven years, and she hoped for a graceful exit when the time came. But Wellsville deprived her of that opportunity, denying her chance to leave on her own terms. Given the context of Blaine's situation and drawing all reasonable inferences in her favor at this stage of the case, Wellsville's actions well might have dissuaded a reasonable employee from complaining of discrimination.

Based on the above, Appellant asks the Court to find that Blaine has put forth facts sufficient to show a *prima facie* case of retaliation.

### 3. The evidence regarding Appellee's offered non-retaliatory rationale is unclear, and best resolved by the factfinder at trial

As with Blaine's discrimination claim, once Blaine satisfies her initial burden under *McDonnell Douglas*, the burden shifts to Wellsville to put forth a legitimate, non-retaliatory reason for her termination, and then the burden shifts back to Blaine to show that such reason is, in fact pretextual. *Hansen*, 844 F.3d 925. While the District Court did not reach this part of the analysis, as it erroneously concluded that Blaine did not prove a *prima facie* case, it is clear that the reasons put forth are either directly discriminatory or retaliatory, or pretextual.

Blaine, along with several other women, reported Sullivan to Wellsville for his continued sexual harassment. Rather than initiating any investigation into these serious claims of sexual harassment, including allegations of unwanted touching and inappropriate remarks, Wellsville owner/operator Scott Averill dismissed these claims as "rumor" and "gossip" (App. 0162, 234). Averill then made the decision to terminate Blaine's employment, supposedly because it was clear that Blaine was not happy due to her complaints of Sullivan's behavior, and Averill did not want someone asserting that a coworker was a "sexual predator." (App. 0244). The record reveals that the only reason Appellee could offer for Blaine's termination is directly linked to her protected activity, further supporting the inference of retaliatory intent.

As set forth above, Blaine has met her burden. Appellant asks the Court to reverse the District Court's grant of summary judgment as to her Title VII retaliation claim. Accordingly, Appellant respectfully requests that this Court reverse the District Court's grant of summary judgment on her Title VII retaliation claim.

### III.    The *BNSF* Standard of Harm Necessary to Support a Retaliation Claim is unsupported by the text of Title VII

Even if this Court finds that the District Court properly applied the retaliation standard as stated above, the Supreme Court's recent decision in *Muldrow* casts doubt on if that standard is still appropriate. In *Muldrow*, the Court examined the City's argument that the level of harm necessary for a discrimination claim should be a materially adverse harm that causes significant harm, as set forth in *BNSF v*

*White*. *Muldrow*, 601 U.S. at 976. The *Muldrow* Court distinguished the two cases, as *Muldrow* dealt with Title VII's antidiscrimination provision, and *BNSF* confronted Title VII's anti-retaliation provision. Since then, some courts have interpreted *Muldrow* as reaffirming the standard of harm for a retaliation claim; however, the Court did not address this question directly. A closer examination of both *Muldrow* and related precedent supports the proposition that the *Muldrow* standard should be extended to Title VII's anti-retaliation provision.

### A. The Plain Text of Title VII

Title VII states that "[i]t shall be an unlawful employment practice to fail or refuse to hire or to discharge any individual, or otherwise *discriminate against* any individual" because of their inclusion in a protected category. 42 USC § 2000e-2(a). This section of Title VII, the anti-discrimination provision, contains similar language to that of Title VII's anti-retaliation provision, Under Title VII's anti-retaliation provision, "[i]t shall be an unlawful employment practice for an employer to *discriminate against* any of [its] employees…because [the employee] has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). While Section 2000e-2 lists more specific examples of discrimination than Section 2000e-3, the definition of "discriminate against" is defined in neither. There is no reason, textually, why "discriminate against" in the first context should be read to

encompass a broader array of adverse activity than the very same phrase used in the one section later in the same statute.

### B. The *BNSF* Standard

In *BNSF v. White*, the Court defined the phrase "discriminate against" as referring to "distinctions or differences in treatment that injure protected individuals" *BNSF*, 548 U.S. at 59. The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. *Id.* at 67.

Throughout the opinion in *Muldrow*, the Court appeared to cast doubt on to the level of harm required for a retaliation claim. In analyzing *BNSF*, the Court declined to use the "significant harm" standard that other circuits have used in the anti-discrimination context. *Muldrow*, 601 U.S. at 356. The Court explained that the anti-discrimination provision, simply "seeks a workplace where individuals are not discriminated against" because of traits like race and sex, preventing "injury to individuals based on status, without distinguishing between significant and less significant harms." *Id* at 358. (quoting *BNSF,* 548 U.S. at 63). (quotations removed). Further, the Court described the reasoning behind such a high standard used in the retaliation context as "frankly extra-textual." *Muldrow*, 601 U.S. at 357.

The text of Title VII's retaliation provision, much like its antidiscrimination provision, does not prescribe a level of harm that is necessary to constitute a

prohibited action. Both provisions use the phrase "discriminate against," to describe the type of conduct that is prohibited. The Court has defined that phrase to mean treat worse or refer to "differences in treatment that injure." *Id*. at 354-55. But nowhere in that phrase, nor the text of Title VII's anti-discrimination or anti-retaliation provisions, does it say anything about how much worse the treatment must be or the extent of the injury. *Id*. at 355. Such an extra-textual addition imposes new standards that have no basis in the text of the statute. The Court in *Muldrow* reiterated that it will not "add words to the law" to achieve what employers might think a desirable result. *Id*. at 357-358 (quoting *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015)). Additional requirements, such as the showing of a significant harm, imposes an extra burden on employees challenging such retaliatory actions that are not contained in the law as written. *Muldrow*, 601 U.S. at 355.

Not only does the text of Title VII and the Court's ruling in *Muldrow* support a lower standard being applied to retaliation claims, but similar reasoning can also be found in *BNSF* to support a more lenient standard. The Court in *BNSF* noted that "[i]nterpreting the antiretaliation provision to provide broad protection from retaliation helps ensure the cooperation upon which accomplishment of the Act's primary objective depends." *BNSF*, 548 U.S. at 67.

As stated above, analyzing Blaine's retaliation claim under *Muldrow* would lead to a conclusion that she has indeed suffered some harm sufficient to meet her burden of showing an adverse employment action, particularly at this summary judgment stage of the case. Appellant respectfully requests this Court to extend the *Muldrow* analysis to Title VII's antiretaliation provision and overturn the District Court's grant of summary judgment as to her claim for Title VII retaliation.

## CONCLUSION

For the foregoing reasons, the District Court's grant of summary judgment on Blaine's claims for sex discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 should be reversed, and this matter should be remanded to the United States District Court for the District of Kansas for further proceedings.

Respectfully Submitted:

**HKM EMPLOYMENT ATTORNEYS LLP**

By:   <u>/s/ *Ethan A. Crockett*</u>
      Ethan A. Crockett     KS No. 79609
      John J. Ziegelmeyer III   KS No. 23003
      1501 Westport Road
      Kansas City, Missouri 64111
      Tel: 816.875.3332
      ecrockett@hkm.com
      jziegelmeyer@hkm.com
      www.hkm.com

## REQUEST FOR ORAL ARGUMENT

Due to the existence of many novel legal issues presented in this case, Appellant requests this Court grant oral arguments of 15 minutes for each party.

## CERTIFICATE OF COMPLIANCE WITH WORD LIMITS AND TYPEFACE REQUIREMENTS

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 7051 words, excluding the parts of the brief excepted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word for Mac in Times New Roman font style in size 14.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 18, 2024, one copy of the foregoing and corrected Opening Brief of Appellant was served on the following via the Court's electronic filing system:

Whitney L. Casement
STEVENS & BRAND, L.L.P.
Attorneys at Law
4848 SW 21st Street, Suite 201
Topeka, KS 66604
Phone: (785) 408-8000
Fax: (785) 408-8003
wcasement@stevensbrand.com

ATTORNEYS FOR APPELLEE


I further certify that seven copies of the foregoing brief will be filed, once deemed compliant, with the United States Court of Appeals for the Tenth Circuit via hand delivery, to:

Chris Wolpert, Clerk of the Tenth Circuit Court of Appeals, Byron White U.S. Courthouse, 1823 Stout Street Denver, CO 80257.


*/s/ Ethan A. Crockett*
Attorney for Appellant