No. 24-3121

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

_____

## JENNIFER BLAINE,
*Plaintiff – Appellant*

v.

## MYSTERE LIVING & HEALTHCARE, INC.
## d/b/a WELLSVILLE HELATH & REHAB,
*Defendant – Appellee*

_____

Appeal from the United States District Court
for the District of Kansas
Hon. Toby Crouse, District Judge
District Court Case No. 2:22-cv-02471-TC-ADM

_____

## BRIEF OF APPELLEE

_____

Whitney L. Casement, KS #25466
**STEVENS & BRAND, LLP**
4848 SW 21st Street, Suite 201
Topeka, KS 66604
T: (785) 408-8000
wcasement@stevensbrand.com
*Counsel for Defendant – Appellee*

Oral Argument is Requested

# TABLE OF CONTENTS

PRIOR OR RELATED APPEALS ................................................................v

STATEMENT OF THE ISSUES ................................................................1

STATEMENT OF THE CASE ...................................................................2

SUMMARY OF THE ARGUMENT ..........................................................9

I.  The district court correctly held that no reasonable jury could find a prima facie case of discrimination. ........................................................11

    a.  Blaine cannot show an inference of discrimination by raising a new argument on appeal. ...................................................................12

    b.  Blaine cannot show an inference of discrimination. ................................14

    c.  Wellsville Health provided non-discriminatory reasons for not requiring Blaine to work through the last day of her notice period. ........................23

    d.  Even under the standard set forth in *Muldrow*, no reasonable jury could find that Blaine suffered an adverse employment action for the purposes of her discrimination claim. ...................................................................25

II.  Retaliation ..............................................................................30

    a.  The standards for adverse action for discrimination and retaliation are different.................................................................................30

    b.  No reasonable jury could find an adverse action under the *Muldrow* standard or the *Burlington Northern* standard............................................32

    STATEMENT OF COUNSEL AS TO ORAL ARGUMENT......................35

    CONCLUSION.............................................................................35

    CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT .......37

    CERTIFICATE OF SERVICE.................................................................38

# TABLE OF AUTHORITIES

## CASES

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) ............................1, 10-11, 25-32

*Harding v. Grisham*, No. 22-7059, 2023 U.S. App. LEXIS 21507 (10th Cir. Aug. 17, 2023) ..................................................................................................9, 11

*Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of the OK Bd. of Regents*, 125 F.4th 1321 (10th Cir. 2025)................................................................................11

*Cordova v. Textron Aviation, Inc.,* No. 21-1031-JWB, 2022 U.S. Dist. LEXIS 108664 (D. Kan. June 16, 2022) ................................................................12

*Murphy v. Stonybrook Univ. Hosp.*, No. 20-cv-1298 (SIL), 2022 U.S. Dist. LEXIS 244336 (E.D.N.Y. Sep. 13, 2022)................................................................12

*Plotke v. White*, 405 F.3d 1092 (10th Cir. 2005)............................................. 12, 18

*Luster v. Vilsack*, 667 F.3d 1089 (10th Cir. 2011)....................................................13

*Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250 (10th Cir. 2018)............................13

*Geometwatch Corp. v. Behunin*, 38 F.4th 1183 (10th Cir. 2022)............................13

*MacKenzie v. Denver*, 414 F.3d 1266 (10th Cir. 2005).............................. 15, 17, 35

*Adamson v. Multi Cmty. Diversified Servs.*, *Inc.*, 514 F.3d 1136 (10th Cir. 2008)….. ........................................................................................................ 19, 22

*Palmer News v. Kansas Empl. Sec. Bd. of Review,* 24 Kan. App. 2d 655, 951 P.2d 546 (1997) .......................................................................................... 28, 33

*Miller v. Help At Home, Inc.*, 186 S.W.3d 801 (Mo. Ct. App. 2006).............. 29, 33

*Rithmixay v. AutoZoners, LLC*, No. 2:21-cv-02332-HLT, 2022 U.S. Dist. LEXIS 194457 (D. Kan. Oct. 25, 2022)................................................................32

*Frank v. Heartland Rehab. Hosp., LLC*, No. 2:20-cv-02496-HLT-KGG, 2022 U.S. Dist. LEXIS 29116, at *19-20 (D. Kan. Feb. 17, 2022).........................................32

*Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)……………. .................................................................................. 1, 10, 29, 31-33, 35

*Somoza v. Univ. of Denver*, 513 F.3d 1206, 1214 (10th Cir. 2008) .................. 33-35

*Jones v. Wichita State Univ.*, 528 F. Supp. 2d 1182, 1193 (D. Kan. 2007) ............34

**STATUTES**

42 U.S.C. 2000e-2 ....................................................................................................26

## PRIOR OR RELATED APPEALS

There are no prior or related appeals.

Wellsville Health, Defendant-Appellee, through counsel Whitney L. Casement of Stevens & Brand, LLP, for its opening brief states:

## STATEMENT OF THE ISSUES

I.    Many of the arguments Blaine makes on appeal were not included in the record before the district court. As such, did she fail to preserve these issues for appeal and are they forfeited?

II.    There is no genuine issue of fact regarding whether there exists an inference of discrimination or an adverse action for the purposes of Blaine's gender discrimination claim. Should this Court affirm the district court's grant of summary judgment on Blaine's Title VII discrimination claim?

III.    As a matter of law, Wellsville Health's actions do not meet the standard for adverse action under *Burlington Northern*. As such, should this Court affirm the district court's grant of summary judgment on Blaine's Title VII retaliation claim?

IV.    Does the standard for adverse action in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) apply to retaliation claims under Title VII, even though the *Muldrow* Court stated the standard does not apply to retaliation claims?

## STATEMENT OF THE CASE

This case involves one incident of inappropriate conduct by a co-worker that occurred in April or May 2019. As set forth below, Blaine experienced no other inappropriate conduct by her co-worker, Tim Sullivan. At the time, Blaine reported to Scott Averill, owner and operator of Wellsville Health & Rehab ("Wellsville Health") that while they were working an omelet breakfast together, Sullivan "reached over and patted my butt repeatedly and said, no pen in there." (App. 86, 270).[1] Averill talked to Sullivan, who immediately admitted what he had done, and Averill gave him a verbal warning that it was inappropriate and to not do it again. (App. 120-123, 234). Averill then agreed with Blaine's request not to have to work the omelet station with Sullivan in the future. (App. 58-59, 210).

Over a year later, on September 29, 2020, Sullivan showed up to work the omelet station with Blaine. (App. 96-98). Blaine and Sullivan worked the omelet station together without incident. (Id.). Averill testified that, after going over a year without incident, he simply forgot about Blaine's request not to work with Sullivan. (App. 235). After Blaine complained to Averill about not wanting to

---

[1] References to appendix page numbers relate to the green page number designated by the 10th Circuit's electronic filing system on the top right of each page of the appendix. The convention (App. Page) will be used throughout this brief for citations to the appendix. For citations to the supplemental appendix, the convention (Supp. App. Page) will be used.

work the omelet breakfast with Sullivan again, Averill agreed she would not have to do so. (Id. at 213).

After reporting the April or May 2019 omelet breakfast incident, neither Blaine nor anyone else made another report of harassment until over two years later. (App. 100, 217-218, 262). In October 2021, Blaine reported to Averill that "Tim took a glove and smacked it on Darcy." (App. 74). This interaction has been referred to as the "glove incident" throughout this litigation. Wellsville Health reviewed video footage of the incident, which showed the contact was not sexual in nature, but was mere horseplay in which both Darcy Schnoor and Sullivan were snapping gloves at one another. (App. 76-78, 149, 203-204); (Supp. App. 22). Wellsville Health immediately suspended Sullivan for several days pending completion of its investigation. (App. 243). Schnoor continued working with Sullivan in the months after the glove incident. (App. 245-46).

After Blaine reported the incident in October 2021, she did not experience or report any harassment by Sullivan. (App. 98-99, 110). In addition, after the October 19, 2021 glove incident, there was no further sexually inappropriate conduct by Sullivan toward any employee. (App. 110-111, 142-147, 252). Blaine was not aware of any conduct involving other female employees until after October 19, 2021, when she approached Schnoor about the glove incident. (App. 79-85, 95, 219).

Contrary to what she states in her brief, Blaine did not testify that Sullivan "groped" her at that time. Rather, she stated that "you always have two skillets making [omelets] made to order and we needed a pen to write down the made to order on tickets and he reached over and patted my butt repeatedly and said, no pen in there." (App. 86). At times, Blaine also mischaracterized the "glove incident" with Schnoor, which happened over two years after the omelet breakfast incident, as "groping." However, she admitted during her deposition in this case that "groping" was an incorrect characterization of what occurred. (App. 203-204).

### Tim Sullivan

Tim Sullivan was Dietary Manager at Wellsville Health from the start of his employment to July 2019, when he was moved to the business office. In the business office, he dealt with business matters, such as new hire paperwork, billing, and employee files. (App. 124-126). There is no record evidence that Sullivan's move from Dietary Manager to the business office was a promotion. Human resources was a minimal function of the business office position, limited to filling out new hire paperwork. (Id. at 229-230). Sullivan was terminated from the business office position in February 2020, because he was ineffective in that position, but then was rehired in food services in September 2020 where he worked until he resigned in May 2022. (Id. at 124-127).

Scott Averill testified that he is friends with Tim Sullivan and occasionally saw him and socialized with him outside of the workplace. (App. 233). There is no record evidence that Blaine was "forced to interact with Tim Sullivan," as Blaine claims in her opening brief.

### *Investigation of Reports by Other Employees*

Wellsville Health did receive reports, from other employees, of Sullivan's alleged misconduct. The conduct described in those reports involved other employees, prior to the glove incident (and which was not reported until after the glove incident), and none of the conduct was directed at Blaine, nor did she witness or know about any of the previous conduct until after the glove snapping incident. (App.  79-85, 95, 219) ("I didn't learn about [other employee incidents] until after Darcy's incident."). In addition, Wellsville Health received no reports of inappropriate conduct taking place after the glove snapping incident. (App. 98-99, 111, 142-147).

After the glove incident, Darcy Schnoor reported other conduct by Sullivan that occurred in previous years. Blaine knew nothing of the conduct directed at Schnoor, save one incident where Sullivan smacked Schnoor on the bottom with papers. (App. 201, 204-207). None of the allegations of inappropriate conduct that Blaine gathered were actually directed toward Blaine or even witnessed or heard about by her until after the October 2021 glove incident. (App. 79-85, 95, 219).

5

Averill never stated that women are prone to gossip, as Blaine claims in her brief. Rather, he stated that there was a lot of rumor and gossip going on at that time and was actually referring to an individual report by an employee named Jackie when he said this during his deposition:

> Because we have a very open and honest culture, and we encourage people all the time, and we have since we began over 15 years ago, if anybody has any issues, complaints, concerns, gripes, to make sure they speak to someone who can do something about it.· And we pride ourselves on handling things as close to the moment of any issues as - - as close to the moment as possible.
>
> When this was taken, what was going on was a lot of rumor and gossip that is not part of our culture, and I read these words, and to answer your question, I didn't have concern because of the context of the situation at that point.

(App.  238).

Other individuals claimed that Sullivan acted inappropriately toward another employee, Maria Rios. However, Rios has stated on several occasions that there was no wrongdoing or treatment by Sullivan that made her feel that she needed to report sexual harassment. (App. 152, 157, 239). Other than Blaine, no employee has filed a charge of discrimination against Wellsville Health. (App. 252).

### *Blaine's Resignation*

Blaine was a Certified Occupational Therapist Assistant and later the Rehab Director during her time with Wellsville Health. (App. 66-67). Wellsville Health's handbook required Blaine to give a 30-day notice of her resignation in order to be

paid accrued leave benefits. However, she only gave a two-week notice. Despite this, she was still paid through her notice period and for her accrued leave payout. (App. 247). There is no record evidence that Blaine was prohibited from saying goodbye to co-workers, residents, and families.

When asked why Blaine was not required to work through the last day of her notice period, Averill testified:

> She was making very clear in conversations leading up to that that she wasn't happy with the fact that we brought Tim back, and she was adamant in her assertion that Tim was a sexual predator, and as a fellow support team member, we're a very small home and a very small support team, it doesn't work to have somebody on your team saying that about a co-worker.

(App. 248). There is no evidence in the record that Averill stated that "he would not tolerate Blaine calling Sullivan a 'sexual predator,'" as claimed by Blaine in her brief. (Br. of Appellant at 4). Blaine's own testimony is consistent with the conclusion that she was unhappy that Wellsville Health allowed Sullivan to return to work. (App. 220-21).

Jill McCoy, Wellsville Health's Administrator, testified that other employees also have not been required to work through the last day of their notice period, while others are allowed to work through the last day of their notice period

when there is no replacement for the individual who resigned. (Supp. App. 17-21).[2]

McCoy further testified that Wellsville Health had a replacement for Blaine, so

they did not require her to work through the end of her notice period. (Supp. App.

21).

### *District Court Memorandum and Order*

Blaine's only gender discrimination claim was that her male counterparts

were allowed to sexually harass female employees and face no consequences for

their actions, while Blaine and other female employees were the subject of constant

sexual harassment. She argued that she was constructively discharged as a result.

(Supp. App. 4, 10). In its Motion for Summary Judgment, Wellsville Health argued

that this claim did not meet a prima facie case of discrimination, in part because

she was not similarly situated to Sullivan. (App. 61-21). Neither the district court

nor Blaine addressed Wellsville's Health arguments in this regard.

The district court held that no reasonable jury could find Blaine was

constructively discharged and granted summary judgment against Blaine on her

---

[2] Blaine did not argue before the district court that not being able to work through
the last day of her notice period and not being able to say goodbye to staff and
residents created an inference of discrimination. See arguments on pages 16-17,
regarding her failure to preserve this issue. As such, relevant portions of Jill
McCoy's deposition transcripts were not included in the record below. Wellsville
Health, thus, is including additional excerpts from McCoy's deposition in its
supplemental appendix, filed with this brief. Wellsville Health is addressing
Blaine's new arguments on appeal out of an abundance of caution, even though she
has forfeited these new arguments.

retaliation and gender discrimination claims based on this holding. (App. 370-373). In addition, the court granted summary judgment on Blaine's Title VII hostile work environment claim deciding no reasonable jury could find that the conduct at issue was severe or pervasive. (App. 366-369).

Blaine has abandoned her constructive discharge and hostile work environment claims on appeal by failing to include them in her opening brief. *See Harding v. Grisham*, No. 22-7059, 2023 U.S. App. LEXIS 21507, at \*6 (10th Cir. Aug. 17, 2023) ("In general, we will only consider issues raised by the party who brings an appeal."). Thus, the Court should affirm the district court's order granting summary judgment on these claims.

## SUMMARY OF THE ARGUMENT

Plaintiff Jennifer Blaine's arguments are a constantly moving target. She made the following arguments for the first time in this appeal and, as such, they were not preserved for appeal and are forfeited:

- Whether there exists an inference of discrimination.

- Attempting to establish an inference of discrimination, Blaine argues: "In contrast to Blaine, other employees who had not made complaints of sexual harassment were allowed to choose their last days of employment and were given an opportunity to say goodbye to the residents and staff."

- Averill's treatment of other employee complaints gives rise to an inference of discrimination against Blaine.

- Wellsville Health's reasons for not requiring Blaine to work out her notice period were pretextual.

- The standard for adverse action set forth in *Muldrow* should apply to retaliation claims.

- Not requiring Blaine to work through her notice period was materially adverse because "she hoped for a graceful exit when the time came" and that "Wellsville deprived her of that opportunity, denying her a chance to leave on her own terms."

Regardless of the preservation issues, Wellsville Health has briefed these issues out of an abundance of caution.

With regard to Blaine's Title VII gender discrimination claim, this Court should affirm the district court's order granting summary judgment for the following reasons: First, Blaine's evidence creates no genuine dispute of material fact about whether there is an inference of discrimination. Second, even applying *Muldrow's* "some harm" standard, no reasonable jury could find that Wellsville Health's actions meet the standard of adverse employment action. Third, Wellsville Health provided a non-discriminatory reason for its actions, and Blaine failed to establish its reason was pretextual.

With regard to Blaine's retaliation claim under Title VII, the standard for adverse action set forth in *Burlington Northern* still applies to retaliation claims, and Blaine failed to present evidence creating a triable issue on whether an adverse action occurred.

Finally, Blaine abandoned her constructive discharge and hostile work environment claims on appeal by failing to include them in her opening brief. The Court should affirm the district court's order granting summary judgment on these claims. *See Harding*, 2023 U.S. App. LEXIS 21507, at *6 ("In general, we will only consider issues raised by the party who brings an appeal.").

## ARGUMENT

On appeal from summary judgment, a court examines the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party. *Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of the OK Bd. of Regents*, 125 F.4th 1321 n.1 (10th Cir. 2025).

**I.    The district court correctly held that no reasonable jury could find a prima facie case of discrimination.**

Blaine's discrimination claim fails for the following reasons: (1) Blaine forfeited the argument of an inference of discrimination, (2) Blaine failed to present evidence to establish an inference of discrimination to the district court, (3) Wellsville Health's conduct does not meet the adverse action standard set forth in *Muldrow*, and (4) Wellsville Health's reasons for its actions were not based on discrimination and were not pretextual.

> To prove a prima facie case of discrimination under Title VII, Plaintiff must establish that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the action took place in circumstances which would give rise to an inference of discrimination.

*Cordova v. Textron Aviation, Inc.*, No. 21-1031-JWB, 2022 U.S. Dist. LEXIS 108664, at *11 (D. Kan. June 16, 2022).

### a. Blaine cannot show an inference of discrimination by raising a new argument on appeal.

There are two routes a Title VII plaintiff can take to establish an inference of discrimination. First, they may try to establish that they were treated less favorably than a similarly situated employee. The second path is to offer evidence of a discriminatory animus, "such as demonstrating criticism in 'degrading terms' singling out the plaintiff's protected class or 'invidious comments about others in the employee's protected group,' and by showing that such comments perpetuated or were based on gender stereotypes." *Murphy v. Stonybrook Univ. Hosp.*, No. 20-cv-1298 (SIL), 2022 U.S. Dist. LEXIS 244336, at *14-15 (E.D.N.Y. Sep. 13, 2022) (internal citations omitted); *see also Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) (setting forth the second route for establishing an inference of discrimination using evidence reflecting a discriminatory animus).

In the pretrial order entered by the district court, Blaine's only gender discrimination claim was that her male counterparts were allowed to sexually harass female employees and face no consequences for their actions, while Blaine and other female employees were the subject of constant sexual harassment. She argued that she was constructively discharged as a result. (Supp. App. 4, 10). In its

Motion for Summary Judgment, Wellsville Health argued that this claim did not constitute a prima facie case of discrimination, in part because Blaine was not similarly situated to Sullivan. (App. 61-62). Neither the district court nor Blaine addressed Wellsville's Health arguments in this regard.

Blaine's claim for discrimination attempts to establish disparate treatment, or that she was treated differently from similarly situated employees. *See Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011) ("One method by which a plaintiff can demonstrate an inference of discrimination is to show that the employer treated similarly situated employees more favorably.").

Blaine has never stated who she claims is a similarly situated employee. The only reference to any inference of discrimination in the district court was in the court's pretrial order. The order stated that Blaine's gender discrimination claim was that her "male counterparts were allowed to sexually harass female employees and face no consequences for their actions." (Supp. App. 4, 10). For the first time on appeal, Blaine argues that "[i]n contrast to Blaine, other employees who had not made complaints of sexual harassment were allowed to choose their last days of employment and were given an opportunity to say goodbye to the residents and staff." (App. Br. at 12). Blaine failed to preserve this argument for appeal, because she did not make the argument before the district court, and therefore, the issue is forfeited. *See, e.g.*, *Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1259 (10th Cir. 2018) ("We

13

ordinarily deem arguments that litigants fail to present before the district court but then subsequently urge on appeal to be forfeited.").

> To preserve an issue for appeal, a party must "alert[] the district court to the issue and seek[] a ruling"—"[a] party does not preserve an issue merely by . . . presenting [it] to the district court in a 'vague and ambiguous' manner," or "by making a 'fleeting contention' before the district court."

*Geometwatch Corp. v. Behunin*, 38 F.4th 1183, 1206 (10th Cir. 2022) (quoting *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1142 (10th Cir. 2009)). "And similarly, the 10th Circuit does 'not address arguments raised in the District Court in a perfunctory and underdeveloped manner.'" *Geometwatch Corp.*, 38 F.4th at 1207 (internal quotations omitted) (quoting *In re Rumsey Land Co., LLC*, 944 F.3d 1259, 1271 (10th Cir. 2019)). In its pretrial order, the district court included Blaine's claim that Wellsville Health treated Blaine less favorably by allegedly letting male co-workers sexually harass coworkers while she was not allowed to do so. However, Blaine failed to include anything about the issue in her response to Wellsville Health's summary judgment motion. Therefore, this issue is forfeited. Out of an abundance of caution, Wellsville Health will still argue the issue in this brief.

### b. Blaine cannot show an inference of discrimination.

Even on appeal, Blaine makes no attempt to show that she is similarly situated to the other employees who she claims were treated more favorably.

Blaine must show that these other employees were similarly situated to give rise to an inference of discrimination. Because Blaine has not done so here, she has not established an inference of discrimination.

### 1. Pretrial order claim that Blaine's "male counterparts were allowed to sexually harass female employees and face no consequences for their actions."

Blaine does not attempt in this appeal to address the claim in the pretrial order that "male counterparts were allowed to sexually harass female employees and face no consequences for their actions." Even if she did, the claim would fail. The only evidence of harassment by a male employee in this case is Tim Sullivan. Therefore, it is reasonable to conclude that is to whom Blaine was referring in support of this claim.

> Individuals are considered "similarly-situated" when they (1) have dealt with the same supervisor; (2) were subjected to the same work standards; and (3) had engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*MacKenzie v. Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005).

Blaine is not similarly situated to Sullivan, because as far as Wellsville Health is aware, Blaine did not engage in conduct like Sullivan's, and there is no evidence in the record to establish that she did—otherwise, Wellsville Health would have raised other defenses in this case.

In addition, Blaine and Sullivan held entirely different positions. Blaine was a Certified Occupational Therapist Assistant and later the Rehab Director during her time with Wellsville Health. (App. 66-67). Sullivan was the Dietary Manager and, for a short time, worked in the business office dealing with payroll and employee files. (App. 124-126). There can be no material dispute on this issue—Blaine and Sullivan were not similarly situated.

### 2. *Blaine's new claim on appeal that she was treated less favorably than other employees who were allowed to work through the last day of their notice period.*

As stated previously, Blaine raises an entirely new argument on appeal that employees who did not complain of discrimination were allowed to work through their notice period and say goodbye to residents and staff. Like her perfunctory claim in the pretrial order below, Blaine fails to argue that she was similarly situated to other employees who were permitted to work through the last day of their notice period and to say goodbye to residents and co-workers. Had she presented this argument before the district court, Wellsville Health would have included testimony by Jill McCoy, Wellsville Health's Administrator, that some employees have not been required to work through the last day of their notice period, while others were allowed to work through the last day of their notice period when there was no replacement for the individual who resigned. (Supp. App. 17-21). McCoy further testified that Wellsville Health had a replacement for

16

Blaine, so it did not require her to work through the end of her notice period.

(Supp. App. 21).

Blaine fails to address whether she was similarly situated to employees who were permitted to work through the end of their notice period. Indeed, she makes the opposite argument by differentiating herself from such employees. Blaine alleges that employees who did not make complaints of discrimination or harassment were allowed to work through their notice period. She makes no attempt to argue that employees who complained of harassment were treated more favorably than she was. In other words, she has failed to argue that she was treated differently than comparable employees: those who dealt with the same supervisor, were subjected to the same work standards, or engaged in similar conduct, as required to show an inference of discrimination. *See MacKenzie*, *supra*.

For these reasons, she has failed to establish she was treated less favorably than other similarly situated employees, as required for her gender discrimination claim.

### 3. *Blaine's attempts to establish an inference of discrimination for the first time on appeal.*

Blaine made no further attempt before the district court to establish an inference of discrimination, instead focusing her efforts on arguing that she was constructively discharged. (App. 191-194). She argued in response to Wellsville Health's motion for summary judgment that Scott Averill's reaction to employee

complaints about Sullivan led Blaine to quit (*i.e.*, because the conditions were so intolerable she was forced to resign). (Id. at 193-94).

Now for the first time on appeal, Blaine argues that Averill's treatment of other employee complaints gives rise to an inference of discrimination against her. Blaine failed to preserve this argument for appeal and, as such, it is forfeited. She never argued this as a basis for the court to find an inference of discrimination and, therefore, failed to preserve this argument for appeal. Wellsville Health will again, address Blaine's new arguments out of an abundance of caution.

Courts look to circumstances, other than being treated less favorably than a similarly situated co-worker, to determine whether there is an inference of discrimination, including:

> actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus . . . , preferential treatment given to employees outside the protected class . . . , in a corporate downsizing, the systematic transfer of a discharged employee's duties to other employees . . . , or a pattern of recommending the plaintiff for positions for which she is not qualified [or over-qualified] and failure to surface plaintiff's name for positions for which she is well-qualified.

*Plotke*, 405 F.3d at 1101 (internal citation omitted). But the Court has also cautioned that a one-off comment, alone, is insufficient. "[A]n isolated and ambiguous comment is generally considered too abstract to support an inference of discrimination. Without more, moreover, an employee's subjective belief in a comment's invidious nature also does not support an inference of discriminatory

18

intent." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1151
(10th Cir. 2008) (citations omitted).

Averill's treatment of other employee complaints does not give rise to an
inference of discrimination, because Averill and Wellsville Health took prompt and
reasonable action with regard to every one of *Blaine's* complaints. Blaine's
argument regarding other employee complaints, which she did not witness and did
not know about, is a red herring.

First, after Blaine reported Sullivan's May 2019 omelet breakfast conduct,
Wellsville Health gave Sullivan a verbal warning. (App. 123, 234). Blaine's next
complaint was over a year later in September 2020, and involved being required to
work at a breakfast with Sullivan, but at that time, Blaine admitted Sullivan did *not*
act inappropriately in any way. (App.  58-59, 70, 212-213, 235). Blaine's third and
final report was that Sullivan allegedly groped another employee named Darcy
Schnoor in October 2021. Wellsville Health investigated that incident by watching
security footage of the incident and determining that there was no inappropriate
conduct. (App. 237); (Supp. App. 22). While other employees belatedly reported
interactions that occurred well before the glove incident (and which were not
reported until after the glove incident), none of those reports involved Blaine.
Blaine did not witness those interactions or know about any of the conduct until
after Blaine spoke to Schnoor after the glove snapping incident. (App. 79-85, 95,

219) ("I didn't learn about [other employee incidents] until after Darcy's incident."). Importantly, Wellsville Health had no knowledge of these other reports until after they were reported following the glove incident. In addition, there were no reports of inappropriate conduct occurring after the glove snapping incident. (App.  98-99, 111, 142-147).

After the glove incident, Wellsville Health reviewed the video which showed the incident was not sexual in nature and was mere horseplay between both Schnoor and Sullivan, who were snapping gloves at one another. (App. 149, 203-204); (Supp. App. 22). After that incident, and talking to Blaine, Schnoor reported other conduct by Sullivan that occurred in previous years. Blaine knew nothing of the conduct directed at Schnoor, save one incident where Sullivan smacked Schnoor on the bottom with papers. (App. 201, 204-207).  None of the allegations of inappropriate conduct were actually directed toward Blaine or even witnessed or heard about by her at or near the time the conduct occurred. (App.  79-85, 95, 219). The allegations largely came from Darcy Schnoor and involved interactions over the previous few years with Sullivan, that Schnoor did not report until Blaine prompted her to report them.

In support of her argument that the court should find an inference of discrimination, Blaine argues for the first time on appeal that Wellsville Health and Scott Averill stereotyped other woman employees as being prone to gossip and

rumormongering and that Averill believed that these other complaints against Sullivan were not legitimate complaints but rather a cadre of women attempting to create a false narrative. The first problem with this argument is that Wellsville Health took Blaine's complaints seriously and investigated them. Although Blaine's complaint about the glove incident was eventually found unsubstantiated, after viewing clear video evidence of the incident, Wellsville Health took Blaine's report about Sullivan's conduct toward Schnoor seriously and reviewed the evidence. Blaine's complaint certainly was not dismissed out of hand.

In addition, there is no evidence in the record that Averill or anyone else at Wellsville Health believed in a stereotype that women were prone to gossip. That is a stereotype that Blaine herself has raised for the first time in this appeal. Blaine argues that Wellsville Health did not believe any of the complaints by women, but again, there is no evidence that this belief was based on a stereotype of women. Indeed, other employee complaints that Wellsville Health investigated proved to be objectively false. The glove incident did not turn out to be Sullivan "groping" Schnoor, as Blaine had claimed. (App. 204). And another employee denied that Sullivan touched her butt, as claimed by that employee's co-workers. (App. 152, 157-158).

Blaine's argument is based on Averill's testimony that he was not concerned about a statement made by one particular female employee for the following reasons:

> Because we have a very open and honest culture, and we encourage people all the time, and we have since we began over 15 years ago, if anybody has any issues, complaints, concerns, gripes, to make sure they speak to someone who can do something about it.· And we pride ourselves on handling things as close to the moment of any issues as - - as close to the moment as possible.

> When this was taken, what was going on was a lot of rumor and gossip that is not part of our culture, and I read these words, and to answer your question, I didn't have concern because of the context of the situation at that point.

(App.  238). Averill did not state that women are prone to gossip. Rather, he stated that there was a lot of rumor and gossip going on at that time. Even if one were to infer that he was referring to the allegations made by women against Sullivan at the time, Averill certainly did not state that *all* women are prone to gossip and rumormongering. Again, that is Blaine's subjective interpretation of the situation and of Averill's testimony. Again, "an isolated and ambiguous comment is generally considered too abstract to support an inference of discrimination. *Adamson*, 514 F.3d at 1151.

Blaine argues further that Wellsville Health believed a man, Tim Sullivan, when Sullivan admitted to wrongdoing, while disbelieving all the women who reported harassment. However, when Blaine reported the incident Sullivan

admitted that Blaine's report was true. Sullivan made an admission that was most

certainly against his interest, and it was reasonable for Wellsville Health to find the

report substantiated when the accused admitted wrongdoing. (App. 120-123).

Because Wellsville Health took Blaine's complaints seriously, investigated

them, and took prompt and reasonable action in response to her complaints, Blaine

can show no inference of discrimination. In addition, one comment that Blaine has

subjectively inferred as stereotyping women is insufficient to show an inference of

discrimination against her based on her gender. For these reasons, this Court

should affirm the district court's order granting summary judgment, because no

reasonable jury would find an inference of discrimination.

### c. Wellsville Health provided non-discriminatory reasons for not requiring Blaine to work through the last day of her notice period.

The decision not to require Blaine to work out her notice period was not

based on her sex. The reasons Wellsville Health gave for not requiring her to work

through the last day of the notice period were because she made it clear she was

unhappy that Sullivan was allowed to come back to work and because she was

continuing to adamantly state that Sullivan was a sexual predator, despite the fact

that the incident she reported as "groping" turned out to be mutual horseplay.

(App. 204, 248) (Supp. App. 22). Blaine's own testimony is consistent with the

conclusion that she was unhappy that Wellsville Health allowed Sullivan to return to work. (App. 220-21). These reasons are not based on sex.

For the first time on appeal, Blaine argues these reasons were pretextual. Blaine failed to preserve this pretext argument for appeal, but Wellsville Health will address this argument out of an abundance of caution.

Blaine argues that Wellsville Health stereotyped other woman employees as being prone to gossip and rumormongering and that Wellsville Health believed these other complaints against Sullivan were not legitimate complaints but rather a cadre of women attempting to create a false narrative. There are several problems with this argument. First, as established above, there is no record evidence establishing that Averill said that all women are prone to gossip or rumormongering or that he otherwise negatively stereotyped women.

Second, and as established previously, Wellsville Health took prompt and reasonable action in response to Blaine's complaints. Blaine clearly was unhappy about the action that Wellsville Health took and continued to call her co-worker a sexual predator despite her complaint being found unsubstantiated based on videographic evidence. Whether Averill believed other employee complaints were legitimate is irrelevant to Blaine's situation. Wellsville Health made the decision not to require a clearly very unhappy employee to continue coming to work through her notice period. Wellsville Health still paid her through that last day of

work (including the notice period when Blaine was not required to work) and paid out her accrued paid time off. If anything, this action was favorable to Blaine, who was clearly unhappy with her work environment. It was reasonable for Wellsville Health to determine that it was better for the workplace not to have an unhappy worker continue to work after she had resigned.

Blaine cannot support her claims against Wellsville Health with other employees' reports. Especially when she was not aware of the conduct when it occurred. And especially when these claims were not raised to Wellsville Health's attention until after Blaine was dissatisfied with Wellsville Health's investigation into the glove snapping incident.

Because Wellsville Health took Blaine's complaints seriously and responded with prompt and reasonable actions, the reasons it gave for allowing her to leave before the final day of her notice period were not pretextual. Therefore, this Court should affirm the district court's grant of summary judgment.

> ### d. Even under the standard set forth in *Muldrow*, no reasonable jury could find that Blaine suffered an adverse employment action for the purposes of her discrimination claim.

Until this appeal, Blaine did not argue that the allegedly discriminatory act at issue in this case was her not being allowed to work through the end of her notice period or say goodbye to clients and co-workers; though she did argue that it was an adverse action for the purposes of her retaliation claim. Rather, in support of her

gender discrimination claim she alleged she was constructively discharged. She now abandons her constructive discharge claim and improperly attempts to shift her claim to make Wellsville Health's decision not to have Blaine work through her notice period the allegedly discriminatory act at issue. Wellsville Health will continue to address Blaine's arguments on appeal out of an abundance of caution, even though Blaine has forfeited these issues on appeal.

In *Muldrow v. City of St. Louis*, the United States Supreme Court determined that the term "discriminate against" used in 42 U.S.C. 2000e-2(a)(1) includes terms and conditions of employment that do not affect economic or tangible harm. 601 U.S. 346 (2024). Rather, the harm need only be "some harm respecting an identifiable term or condition of employment." *Id*. at 347. This is a much broader understanding of discrimination than courts applied before the *Muldrow* decision. Previously, courts required a showing of "significant' change in working conditions producing 'material employment disadvantage.'" *Id*. at 352.

A discussion of the circumstances of *Muldrow* is necessary to understand its implications. In *Muldrow*, the St. Louis Police Department transferred the plaintiff from a plainclothes officer position in the Intelligence Division to a uniformed job elsewhere in the department. In the new position, Muldrow's responsibilities, perks, and schedule changed.

> After the transfer, Muldrow no longer worked with high-ranking officials on the departmental priorities lodged in the Intelligence

Division, instead supervising the day-to-day activities of neighborhood patrol officers. She also lost access to an unmarked take-home vehicle and had a less regular schedule involving weekend shifts.

601 U.S. at 361.

In her previous position, "Muldrow was also deputized as a Task Force Officer with the Federal Bureau of Investigation—a status granting her, among other things, FBI credentials and the authority to pursue investigations outside St. Louis." In the transferred position, she lost this status with the FBI, including the car that came with it. In the new position, her work schedule also became less regular. *Id*. Muldrow testified that she was moved to a less prestigious position into a more administrative role where she had fewer opportunities to work on important investigations and network with commanding officers. *Id*. The Supreme Court held that these changes to her job met the standard for "discrimination against" an individual in the "terms and conditions" of employment. *Id*. at 359.

The parties in *Muldrow* agreed that the transfer implicated "terms and conditions" of the plaintiff's employment. The disagreement in *Muldrow* surrounded whether the transfer met the standard required to show that the department "discriminate[d] against" the plaintiff. The Supreme Court held the transfer met the threshold of "some harm" affecting the terms and conditions of Muldrow's employment.

In this case, Blaine cannot show "some harm respecting an identifiable term or condition of employment." Blaine claims she was asked not to work through her notice period and that she was not allowed to say goodbye to residents, their families, or staff. These actions fall far below the terms and conditions affecting Muldrow's employment.  Against her will, Muldrow was transferred from a prestigious intelligence position in which she enjoyed FBI credentials and a department vehicle to a uniformed position that required only low-level administrative work. Unlike Muldrow, Blaine voluntarily resigned and was paid through the last day of her notice period and paid her accrued leave benefits. Being asked not to complete your notice period, after you have voluntarily resigned your employment does not meet the "some harm" standard set forth in *Muldrow* in these circumstances, nor did it effect the "terms and conditions of her employment."

Blaine claims that she was terminated; however, being asked not to work through a notice period, while being paid through the last day of the notice period, is not a termination. "[W]hen an employee voluntarily submits her resignation and gives notice, if the employer accepts that resignation but pays the employee for the notice period and tells the employee not to show up for the notice period, that job separation is a voluntary quit." *See Palmer News v. Kansas Empl. Sec. Bd. of Review,* 24 Kan. App. 2d 655, 656, 951 P.2d 546 (1997) (analyzing resignation in context of unemployment claim) (quoting *Safeco Ins. Co. v. Meyering*, 102 Wash.

2d 385, 394, 687 P.2d 195 (1984)); *Miller v. Help At Home, Inc.*, 186 S.W.3d 801,

806-07 (Mo. Ct. App. 2006) (an employee quit her job and was not involuntarily

terminated when her employer stated that her last day would be before her two

weeks' notice period had ended). Again, Blaine was also paid out all accrued leave

even though she did not provide the amount of notice required by the employee

handbook. (App. 102-108, 156).

On appeal, Blaine also claims that she was not allowed to say goodbye to

residents, their families, or staff. (App. 0171, 220) ("I loved my job, I loved my

therapy team, I loved those residents and their families, I bonded with them, and I

didn't get to say good-bye to any of them."). Darcy Schnoor also speculated that

Blaine was not allowed to say goodbye. (App. 279) ("Like, you cannot say good-

bye to your residents. You cannot say good-bye to your co-workers, your

friends."). There is no evidence in the record that states that Blaine was prohibited

from saying goodbye to residents, families, and staff. Even if Blaine's testimony

that she "didn't get to say good-bye" was enough to create a question of fact about

whether she was prohibited from doing so, this prohibition would still not meet the

*Muldrow* standard for harm.

The reasons Wellsville Health gave for not requiring her to work through her

two-week notice period was that Blaine was unhappy with what she perceived to

be an inadequate response by Wellsville Health to reports of harassment by other

29

women and because Blaine was stating that her co-worker was a sexual predator. (App. 248) ("She was making very clear in conversations leading up to that that she wasn't happy with the fact that we brought Tim back, and she was adamant in her assertion that Tim was a sexual predator[.]"). Blaine called him a sexual predator and said he "groped" Schnoor. (App. 204) ("That morning it appeared he had groped her."). She later admitted her characterization that he "groped" Schnoor was inaccurate. (App. 204). Wellsville Health's reasons for asking Blaine not to work through her notice period were reasonable and not pretextual. Blaine was not required to continue coming to a workplace where she said she was unhappy. These facts simply do not rise to the same level as those described in *Muldrow*.

Because no reasonable jury would find that Blaine's evidence meets the standard set forth in *Muldrow* for an adverse action, this Court should affirm the district court's grant of summary judgment against Blaine's discrimination claim.

## II. Retaliation

### a. The standards for adverse action for discrimination and retaliation are different.

For the first time on appeal, Blaine sets forth an argument that the *Muldrow* standard should apply to a claim for retaliation. Therefore, she failed to preserve this issue for appeal. Wellsville Health will address the argument out of an abundance of caution.

Blaine argues that because both the anti-discrimination and anti-retaliation statutes use the language "discriminate against," the standard for adverse action should be the same for both causes of action. However, the Supreme Court in *Muldrow* already explained that the standard for adverse action in the context of retaliation is different than that of discrimination, because the purpose of each statute is different. The Supreme Court in *Muldrow* recognized that the standard for adverse action in the context of a Title VII retaliation claim is "materially adverse" harm or "significant" harm, pursuant to the standard previously set forth in *Burlington N. & S. F. R. Co. v. White*, 548 U. S. 53 (2006). *See* 601 U.S. at 348. Indeed, the Court acknowledged that the anti-retaliation provision in Title VII is intended "to capture those employer actions serious enough to 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.'" *Id*. In contrast, the anti-discrimination provision is intended to "'prevent[ ] injury to individuals based on' protected status." *Id.*

The EEOC's amicus brief also noted the Court's recognition of different standards for proving harm in the discrimination and retaliation contexts. (Amicus Br. at 14). As such, this Court should decline apply the *Muldrow* standard for adverse action to Blaine's retaliation claim. The appropriate standard is the materially adverse standard set forth by the Supreme Court in *Burlington Northern*.

31

### b. No reasonable jury could find an adverse action under the *Muldrow* standard or the *Burlington Northern* standard.

Blaine voluntarily resigned, and therefore, there was no adverse employment action. *See Rithmixay v. AutoZoners, LLC*, No. 2:21-cv-02332-HLT, 2022 U.S. Dist. LEXIS 194457, at *24 (D. Kan. Oct. 25, 2022) ("Plaintiff fails to make a prima facie retaliation case because she did not suffer an adverse employment action when she voluntarily resigned."). In addition, not requiring Blaine to work her full notice period is not an adverse employment action, especially where she was paid for that time. Finally, her subjective desire to have a "graceful exit" and to leave "on her own terms" does not make these actions materially adverse.

Without direct evidence of retaliation, Blaine must show a prima facie case of retaliation according to the *McDonnell Douglas* framework: "(1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged action materially adverse, and (3) a causal connection exists between the protected activity and the materially adverse action." *Frank v. Heartland Rehab. Hosp., LLC*, No. 2:20-cv-02496-HLT-KGG, 2022 U.S. Dist. LEXIS 29116, at *19-20 (D. Kan. Feb. 17, 2022).

Blaine's claim falters at step two—she cannot establish a materially adverse action. The EEOC filed an amicus brief to ensure application of the correct adverse action standard. While the district court applied the wrong standard, it arrived at

the correct conclusion. The Supreme Court established the standard for adverse

employment action, for the purposes of a retaliation claim, in *Burlington Northern*:

> In our view, a plaintiff must show that a reasonable employee would
> have found the challenged action materially adverse, "which in this
> context means it might well have dissuaded a reasonable worker from
> making or supporting a charge of discrimination." We speak
> of *material* adversity because we believe it is important to separate
> significant from trivial harms. Title VII, we have said, does not set
> forth a general civility code for the American workplace.

548 U.S. at 68. The materially adverse action standard is an objective one. *Somoza*

*v. Univ. of Denver*, 513 F.3d 1206, 1214 (10th Cir. 2008) (quoting *Burlington N.*,

548 U.S. at 68).

On appeal, Blaine abandons her argument that she was constructively

discharged. Instead, she for the first time argues she was terminated when she was

told she did not have to work through the last day of her notice period. However,

as established above, "when an employee voluntarily submits her resignation and

gives notice, if the employer accepts that resignation but pays the employee for the

notice period and tells the employee not to show up for the notice period, that job

separation is a voluntary quit." *See Palmer News,* 24 Kan. App. 2d at 656; *Miller*,

186 S.W.3d at 806-07. Blaine received pay for her final two weeks and even

received a payout for her accrued paid time off, even though she did not give the requisite notice to qualify for that payout. (App. 247).

Blaine further claims that not requiring her to work through the last day of her notice period was adverse, because "she hoped for a graceful exit when the time came" and that "Wellsville deprived her of that opportunity, denying her chance to leave on her own terms." (App. Br. at 23). Once again, Blaine has shifted away from the arguments she made in support of establishing the adverse action element before the district court, arguing for the first time on appeal that it was materially adverse to disallow her a "graceful exit." She failed to preserve this argument before the district court, but it will be addressed below, out of an abundance of caution.

"[P]etty slights and minor annoyances" are not materially adverse. *Jones v. Wichita State Univ.*, 528 F. Supp. 2d 1182, 1193 (D. Kan. 2007) (quoting *Martin v. Merck & Co.*, 446 F. Supp. 2d 615, 639 (W.D. Va. 2006)). In *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1219 (10th Cir. 2008), this Court held that "negative comments, condescending looks, perceived exclusion from hiring and firing decisions, and a reduction in the administrative authority within the department" were insufficient, even in the aggregate, to establish a materially adverse action. This Court acknowledged that the plaintiffs in *Somoza* subjectively experienced difficulties related to these actions, but that applying an objective standard, such

actions would not have dissuaded a reasonable employee from pursuing a claim. *Id*. at 1218-19; *see also Burlington N.*, 548 U.S. at 68 (citing 1 Barbara Lindemann & Paul Grossman, Employment Discrimination Law 669 (3d ed. 1996) (noting that "'snubbing' by supervisors" is not actionable retaliation)); *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005) (holding that "silent treatment" is "mere passive treatment [that] does not constitute an adverse employment action"). Like the actions in *Somoza*, Blaine likely subjectively experienced difficulties related to leaving Wellsville Health before the final day of her two-week notice period, but this does not amount to a materially adverse action.

Because no reasonable jury could conclude that Blaine was terminated or that moving up her last day, while paying her through her notice period, and denying her the "graceful exit" that she subjectively desired, were adverse employment actions, Blaine's retaliation claim fails.

## STATEMENT OF COUNSEL AS TO ORAL ARGUMENT

Wellsville Health agrees with Blaine's statement regarding the need for oral argument.

## CONCLUSION

Blaine abandoned her hostile work environment and constructive discharge claims by not including them in her opening brief. In addition, she forfeited

arguments regarding an inference of discrimination, pretext, the standard applicable to adverse action for retaliation claims, and the underlying basis for adverse action for her retaliation claim, by failing to raise these issues before the district court.

In any case, this Court should affirm the district court's order granting summary judgment because no reasonable jury could find an inference of discrimination with regard to Blaine's gender discrimination claim or an adverse action for the purposes of her discrimination and retaliation claims. In addition, Wellsville Health set forth non-discriminatory and non-retaliatory reasons for not requiring Blaine to work through the last day of her notice period, and no reasonable jury could find those reasons pretextual.

As such, Wellsville Health respectfully requests that this Court affirm the decision by the district court.

Date: February 18, 2025

s/ *Whitney L. Casement*
Whitney L. Casement, #25466
Stevens & Brand, LLP
4848 SW 21st Street, Suite 201
Topeka, Kansas 66604
Tel: (785) 408-8000
Fax: (785) 408-3008
wcasement@stevensbrand.com
*Attorney for Wellsville Health*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Certificate of Compliance With Type-Volume Limit,

Typeface Requirements, and Type Style Requirements

1. This document complies with type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) excluding the parts of the brief excepted by Fed. R. App. P. 32(f) 10th Cir. R. 32(B), because,:

   [X] this document contains 8,538 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [X] this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

   Date: February 18, 2025

*s/ Whitney L. Casement*
Whitney L. Casement, #25466
Stevens & Brand, LLP
4848 SW 21st Street, Suite 201
Topeka, Kansas 66604
Tel: (785) 408-8000
Fax: (785) 408-3008
wcasement@stevensbrand.com
*Attorney for Wellsville Health*

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2025 I electronically filed the foregoing using the court's CM/ECF system which will send notification of such filing to the following:

Ethan Crockett

ecrockett@hkm.com


John Ziegelmeyer

jziegelmeyer@hkm.com


Date: February 18, 2025

s/ *Whitney L. Casement*
Whitney L. Casement, #25466
Stevens & Brand, LLP
4848 SW 21st Street, Suite 201
Topeka, Kansas 66604
Tel: (785) 408-8000
Fax: (785) 408-3008
wcasement@stevensbrand.com
*Attorney for Wellsville Health*